Creighan *v.* Firemen's Relief and Pension Fund Board, Appellant.

Argued October 8, 1959.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*George Shorall,* Assistant City Solicitor, with him *David Stahl,* City Solicitor, for appellant.

*Thomas Lewis Jones,* with him *Richard C. Witt,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 24, 1959:

James Creighan, fireman, has brought an action of mandamus against the Firemen's Relief and Pension Fund Board of the City of Pittsburgh for pension benefits under the Firemen's Relief and Pension Fund Law of May 25, 1933, P. L. 1050, as amended (53 P.S. §23601 et seq.) hereinafter referred to for brevity's sake as the Pension Law.

Creighan became a fireman in the City of Pittsburgh on May 11, 1937, and performed the duties of a hoseman until February 22, 1949, when tuberculosis of the respiratory system forced him into a sanitarium (Leech Farm) where he remained until April, 1950. From that date until October 20, 1951, he was an outpatient, but his condition worsened and he re-entered

the sanitarium, this time remaining until September, 1953 when the doctors certified him for light duty which, however, was never assigned to him. On June 21, 1954, he was certified to be permanently and totally incapacitated.

In the meantime (November, 1952) he had brought an action against the City of Pittsburgh under the Heart and Lung Act.[1] At the trial, in that action, the jury made specific findings of fact, namely, Creighan was suffering from tuberculosis of the respiratory system which was contracted or incurred after four years of continuous service as a fireman, that it was caused by extreme overexertion in times of stress or danger and by exposure to heat, fumes, or gases arising directly out of his duties as a fireman, and that he was totally and permanently disabled as of June 21, 1954. On appeal to this court (*Creighan v. City of Pittsburgh*, 389 Pa. 569), we sustained those findings and affirmed a judgment of $13,648.29 for the period of his temporary incapacity. We allowed no amount for permanent incapacitation because we concluded that the provisions of the Heart and Lung Act were restricted to temporary disability.

In February, 1958, Creighan filed an action in mandamus to compel the Firemen's Relief and Pension Fund Board (hereinafter to be referred to as the Board) to award him a pension under the Pension Law, which authorizes pension payments when it is established that the applicant "while a member of the fund, was injured in the line of duty and disabled through such injury, that such disability continues, and that the applicant is no longer entitled to payments from the city under the provisions of the Workmen's Compensation Act, and its amendments."

---

[1] Amendment of Sept. 27, 1951, P. L. 1473, to Act of June 28, 1935, P. L. 477 (53 P.S. §637).

The Court of Common Pleas of Allegheny County awarded Creighan the claimed-for pension and the Board has appealed. The only question raised in the appeal is whether the claimant's admitted disablement (tuberculosis of the respiratory system) is an injury within the meaning of the Pension Law. The Board contends that in order to prove his claim, the plaintiff must "point to a particular or definite occurrence, event or incident which brought on the disease" and that since the plaintiff's malady is "one of a latent and insidious nature which progresses gradually and manifests itself over a long period of time," it cannot be designated an injury.

The Board thus attempts to limit the scope of the word *injury* and to force it within a lexicographical strait jacket which is not apparent in a reading of the Pension Law. The Board would restrict the meaning of *injury* to the limitations placed upon the word in an entirely different law, the Workmen's Compensation Act, which specifies that "injury" and "personal injury" "as used in this act, shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom."

But the Pension Law here involved contains no such restriction, and, since it postdates The Workmen's Compensation Act, we must assume that the Legislature purposely avoided repeating in the Pension Law the legislative definition of injury which appears in The Workmen's Compensation Act. Thus, the cases[2] cited by the Board which emphasize the term "violence to the physical structure of the body", do not and cannot apply to the Pension Law.

---

[2] *McCauley v. Imperial Woolen Co.*, 261 Pa. 312 and *Billo v. Allegheny Steel Company*, 328 Pa. 97.

In this posture of affairs, we are compelled to give to the word injury its common, non-technical meaning. What is that meaning? Webster's International Dictionary defines injury as: "Damage or hurt done to or suffered by a person or thing; detriment to, or violation of, person, character, feelings, rights, property, or interests, or the value of a thing . . . Synonyms: Detriment, hurt, loss, impairment; prejudice, evil, ill, injustice, wrong . . . Injury is the general term for hurt of any sort, whether suffered by a person (often in the sense of a wrong) or a thing."

It will be noted that nowhere in the definition is violence a preliminary *sine qua non* to injury. Thus, according to Webster, a not inconsequential authority on words, a breakdown of tissue in the lungs may (under certain circumstances) be as much an injury as a laceration of flesh and muscle or even a fracture of bone, especially if the drastic change in the fabric of the lungs is the result of mishap or misadventure. Nor does the physical disablement need to occur simultaneously with the physical phenomenon which is its cause, in order for the disablement to be denominated an injury. For instance, a fireman who rubs against a poisonous chemical, whose injuring properties do not become manifest on the fireman's body until days, or even weeks, following the contact, is no less injured in the performance of his duty than the fireman who falls from a ladder. Nor should it be doubted that a fireman who contracts ivy poisoning while climbing the side of a building in performing rescue work is injured just as surely as if he had been struck by cascading debris.[3]

---

[3] A lower Court allowed a recovery to a fireman in just such a case under by-laws of a Firemen's Relief Association which provided, inter alia, "Any member who shall be injured while on public fire duty . . . shall receive the sum of four dollars per day for

But even according to the Board's blueprint of injury, Creighton may still not be denied pension payments. The inhalation of smoke and flame can damage the lungs with as much traumatic violence as a knife wound. In *Roth v. Locust Mt. St. Hosp.,* 130 Pa. Superior Ct. 1, the Superior Court awarded workmen's compensation in a case where the decedent (a surgeon) died of pneumonia following wet and cold exposure while performing an operation in an unusually cold dispensary. In *Nelson v. Greenville,* 181 Pa. Superior Ct. 488, the decedent fireman, emerging from a fire, coughing from the effect of smoke, "complained of pain in his arms and chest, and collapsed." The Superior Court held that "this testimony was clearly sufficient to establish an injury resulting from unusual exertion in the course of employment." The fact that the injury in the instant case made itself manifest at a later period than the one involved in the cited cases does not alter the principle involved.

Calling tuberculosis a disease does not take it out of the realm of pulmonary violence. It is often said of persons who die from coronary seizures that they have succumbed to "heart disease".

The Board argues that because the original Heart and Lung Act of 1935 was amended in 1951 (P. L. 1473) to include "the diseases of the heart and tuberculosis of the respiratory system," no benefits for tuberculosis are payable under the Pension Law unless it is similarly amended. But this is fallacious reasoning on several points. In the first place, the language of the original Heart and Lung Act differs considerably from that contained in the Pension Law. The Legislature amended the Heart and Lung Act because this

---

the period of his incapacitation." *Wallitsch v. Allentown Firemen's Relief Association,* 12 Pa. D. & C. 2d 28, Lehigh County Court of Common Pleas.

legislation dealt with specific organs and the Legislature set up specific requirements pecularily applicable to the heart and lungs. However, it saw fit *not* to impose such requirements in the Pension Law, which is not limited to any particular disablement or disease. And we are not empowered to build a bridge of interpretation from one law to another which are in no way legislatively associated with one another.

The Board also argues that since the Occupational Disease Act was passed in order to deal with diseases not resulting from traumatic injury, the Pension Law would have to undergo similar amendment before it could include pensions for tuberculosis. However, the Board overlooks the fact that the Occupational Disease Act was necessary because of the restricted meaning of the term "injury" in the Workmen's Compensation Act. And, it is to be repeated, the Pension Law contains no such restriction.

The Supreme Court of Massachusetts well stated the matter in the *Burns* case, 218 Mass. 8, 12, where it said: "In common speech the word 'injury', as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain, or a lessened facility of the natural use of any bodily activity or capability."

Thus, under our Pension Law, it does not matter whether the "change" is caused by violent trauma or by a course of deleterious conduct which leads to incapacitation, provided, of course, the "change" occurs as the result of acting in the line of duty. The Supreme Court of Wisconsin, in the case of *State ex rel. McManus v. Board of Trustees of Policemen's Pension Fund,* 138 Wis. 133, 119 N.W. 806, has spoken convincingly on this subject: "The word 'injury' in ordinary modern usage, is one *of very broad designation.* In the strict sense of the law, especially the common

law, its meaning corresponded with its etymology. It meant a wrongful invasion of legal rights, and was not concerned with the hurt or damage resulting from such invasion. It is thus used in the familiar law phrase damnum absque injuria. In common parlance, however, it is used broadly enough to cover both the damnum and the injuria of the common law, *and indeed is more commonly used to express the idea belonging to the former word, namely, the effect on the recipient in the way of hurt or damage, and we cannot doubt that at this day its common and approved usage extends to and includes any hurtful or damaging effect which may be suffered by anyone* . . . By itself the word 'injury' or 'injure' has no more application to the result of violence than to the result of any other injurious influence. A disease resulting from negligence of a physician in failing to give treatment is just as much an injury in common phrase as if it resulted from affirmative maltreatment or external violence." (Emphasis supplied)

It thus must be quite clear that a fireman who contracts tuberculosis of the respiratory system as a result of his fireman's duties and has, in consequence, become totally disabled, has sustained an "injury" within the intendment of the Pension Law. The purpose of this law, as stated in the Preamble, is to "create and establish a fund for the care, maintenance and relief of aged, retired and disabled firemen in the Bureau of Fire of such City." In *Kurtz v. Erie,* 389 Pa. 557, 568, this Court said: "It is difficult, if not impossible, to believe that the Legislature attempted to differentiate between permanently disabled firemen on the basis of the nature of the injuries received in determining whether compensation should be paid."

There is nothing in the Pension Law which would suggest that the Legislature intended to differentiate

between the types of "injury" sustained, so long as the injury arose out of performance of duty and the resulting disability became a continuing one. All the requirements of the Act are met by the admitted facts in this case.

We therefore affirm the order of the court below directing the defendant Board to accept from plaintiff as a member of its Fund the sum of $1,032.46 erroneously permitted to be withdrawn by him from the Fund in the belief he was no longer a member thereof, and ordering the Board, upon receipt of that sum, to name the plaintiff a beneficiary of the Fund, entitled to monthly pension from June 21, 1954 to the present time and henceforth so long as he qualifies under law and regulations, but without interest on the accumulated payments.

Order affirmed; costs to be borne by appellant.