525 A.2d 1204

Frank PAWLOSKY

v.

WORKMEN'S COMPENSATION APPEAL BOARD and Latrobe Brewing Company.

Appeal of LATROBE BREWING COMPANY.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1986.

Decided May 29, 1987.

Roy F. Walters, Jr., Joseph F. Grochmal, Fried, Kane, Walters & Zuschlag, Pittsburgh, for appellant.

Vincent J. Quatrini, Jr., Greensburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA, and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal by allowance from an order of the Commonwealth Court reversing the denial of workmen's compensation benefits to the appellee herein, Frank Pawlosky. The issue before us is whether a disability caused by the job-related aggravation of a pre-existent disease, not specifically designated as an "occupational disease" by section 108 of The Pennsylvania Workmen's Compensation Act

("Act"),[1] is compensable pursuant to the general "injury" provisions in section 301(c)(1) of the Act.[2]

From April 1950 until October 1977, Frank Pawlosky (claimant) was employed at the Rolling Rock Brewery of the Latrobe Brewing Company ("Latrobe"), a business engaged in the manufacture of beer. During that twenty-seven year period Pawlosky worked for Latrobe in various capacities, including the jobs of carbonator, "beer dropper" and cellarman. However, for twenty-three years of his career at the brewery Pawlosky worked in the fermenting cellars, an assignment which required him to periodically clean and sterilize tanks with a solution of chlorine. During the course of a work day he was also exposed to the fumes of such other chemical agents as caustic soda and sulphuric acid, which were also used by the employer for cleaning purposes.

In November of 1977 Pawlosky filed a claim petition for workmen's compensation, alleging that he had become disabled by an "occupational disease" within the coverage of section 108 of the Act. The petition further averred that the disability was caused by a lung infection and an asthmatic condition resulting from his long exposure to the fumes of chlorine and other chemical solutions used at the brewery. Latrobe responded with an answer demanding proof of the claim. Thereafter, the claimant amended his petition to assert entitlement under the general compensation provisions of the Act, namely, section 301(c)(1).

In the proceedings before the referee, claimant Pawlosky testified as to his employment history and described certain breathing problems which, having started several years prior, caused him to leave his job at the brewery in October of 1977. He admitted on cross-examination that he had been, at one point in his life, a heavy smoker of cigarettes. The claimant also stated that, after receiving various pro-

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1 *et seq.* Section 108, 77 P.S. § 27.1, was added by section 1 of the Act of October 17, 1972, P.L. 930.

2. 77 P.S. § 411(1).

fessional diagnoses of his breathing problem, he was finally advised by another physician in March, 1977, that he was suffering from a severe bronchial asthmatic condition.

Pawlosky's medical witness in the proceedings was Dr. Raymond Mayewski, who testified that the claimant was suffering from an obstructive *disease* of the bronchial airways and that the condition could be classified as asthma. Dr. Mayewski defined asthma as a hyper-reactivity of the bronchial airways to irritants, and explained that when irritation occurs the result is a bronchospasm, or asthmatic attack, which is characterized by wheezing and shortness of breath. This witness could not say how or when the claimant contracted asthma, but he was of the opinion that fumes from the chemicals to which the claimant was exposed at the workplace would irritate the ailment and cause attacks. Based on that opinion, Dr. Mayewski concluded that the claimant was no longer able to engage in his former employment at the brewery. Regarding irritation of the claimant's asthma, the doctor conceded that a variety of non-occupational stimuli could have the same effect.

Latrobe's medical witness, Dr. C. Vaughn Strimlan, described the claimant's condition as being a severe, chronic, obstructive pulmonary disease. Dr. Strimlan agreed that the condition would be aggravated or irritated by the chemicals at the brewery, and that the claimant should not return to such an environment. This witness also opined that the claimant's basic ailment would be irritated by a number of other agents, including cigarette smoke, paint fumes and even hair spray. Going further, however, Dr. Strimlan took the position that Mr. Pawlosky's underlying respiratory malady had been caused by the heavy smoking of cigarettes over a period of many years, and did not result from any job-related exposure.

Based on the medical and other evidence adduced at the hearings, the referee found that the claimant had asthma, that the ailment was aggravated by the fumes of chlorine, caustic soda and sulphuric acid, and that he was totally disabled as a result. After noting that the claimant did not

proceed to prove his case "in an occupational disease context", the referee then found that the claimant's exposure to the said chemical fumes in the workplace did not cause "a separate occupational disease" but rather aggravated an asthmatic condition that was pre-existent. The referee next determined that, since the asthma was not one of the occupational diseases specifically mentioned in sections 108(a)–(m) or (o)–(q) of the Act, it became incumbent upon the claimant to establish his case under the omnibus provision in section 108(n), 77 P.S. § 27.1(n), which accords to any other disease the status of an "occupational disease" if certain factors are proved.[3] Observing that one of the requirements under section 108(n) is that such other disease have an incidence in the claimant's work which is "substantially greater in that industry or occupation than in the general population," the referee dismissed Pawlosky's claim petition because no such proof had been offered. It is obvious from the referee's decision that he rejected the claimant's assertion that section 301(c)(1) provided a basis for compensation, even though the decision made no express reference to that contention.

The claimant followed with an appeal to the Workmen's Compensation Appeal Board ("Board"), which affirmed the referee's decision. The Board reasoned that the claimant sought benefits for an "occupational disease-like injury" and that such was compensable only under section 108(n). The Board therefore concluded that, since he had not satisfied the proof demands of that section, the claimant could not prevail.

Pawlosky filed a petition for review in the Commonwealth Court. That court reversed the Board and entered an order mandating an award of benefits. *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)*, 81 Pa.Cmwlth. 270, 473 A.2d 260 (1984). In its resolution of

---

**3.** This provision incorporates into section 108 "[a]ll other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population."

the case, Commonwealth Court held that the workplace aggravation of a pre-existent disease constituted an "injury" within the meaning of the current version of section 301(c) of the Act, even if the exposure-type harm is not proven to be an occupational disease within the compass of section 108. Based on the evidence and the referee's findings in the matter, the court further held that the claimant was entitled to benefits by force of section 301(c)(1). Thus, in the view of the Commonwealth Court, the referee and the Board had erred in applying occupational disease standards to the claim.

█ Latrobe responded to the above decision by petitioning this Court for an allowance of appeal, which we granted. Since in this appeal there is no challenge to any of the referee's factual findings, or any assertion that constitutional rights have been violated, our scope of review is confined to a determination of whether an error of law was committed. *See Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.,* 479 Pa. 286, 388 A.2d 659 (1978); *McGee v. L.F. Grammes & Sons, Inc.,* 477 Pa. 143, 383 A.2d 864 (1978); *Utter v. Asten-Hill Mfg. Co.,* 453 Pa. 401, 309 A.2d 583 (1973).

The appellant argues, of course, that the referee and the Board were correct in deciding that claimant Pawlosky had to prove his case pursuant to the omnibus provision in section 108(n) of the Act. To amplify this contention the appellant begins by pointing out that the claimant's underlying asthmatic condition, though medically classifiable as a disease, is not specifically included in the statutory schedule of "occupational diseases", and that the condition was not in itself caused by any workplace exposure. The appellant then emphasizes that the claimant's asthma is an ailment common in the general population and one that can be aggravated by a variety of non-occupational causes. Having armed itself with the above premises, the appellant argues that the claimant's right to receive workmen's compensation, for the aggravation of his asthmatic condition by on-job irritants, required proof that the incidence of aggra-

vation was substantially greater in his industry or occupation than in the general population. According to the appellant, it was not enough for Pawlosky to prove that the disabling aggravation was in fact caused by his work environment; he had to go further and show that his work-related *exposure to aggravation* was of the comparative degree required by section 108(n).

In support of its argument the appellant states that "since 1972 it has been the clear legislative intent to define 'injury' in terms of (1) the old pre–1972 concept of 'accidental injury', and (2) the occupational disease definitions which had previously only appeared in the Pennsylvania Occupational Disease Act of 1939." Having fashioned this interpretation of the current Pennsylvania Workmen's Compensation Act, the appellant concludes that where the harm in question involves a disease the exclusive route to compensation is through the occupational disease provisions of section 108.

As originally enacted in 1915 The Pennsylvania Workmen's Compensation Act provided benefits only for injury or death resulting from an "accident" in the course of employment. Sections 101, 301(a), 77 P.S. §§ 1, 431 (1915) (amended 1972). The word "injury" was statutorily defined as meaning "only violence to the physical structure of the body, and such disease or infection as naturally results therefrom...." Section 301(c) of the Act, 77 P.S. § 411 (1915) (amended 1972). Although the original Act specifically defined the term "injury," the statute contained no definition of the word "accident." Therefore, the task of defining what was an "accident" within the meaning of the Act had to be assumed by the courts; and they proceeded to interpret that word essentially in accordance with its usual, ordinary and popular sense. *See Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724 (1933); *McCauley v. Imperial Woolen Co.*, 261 Pa. 312, 104 A. 617 (1918).

It has been observed that the word "accident" in the original Act was deliberately left free of precise statutory definition to keep the concept flexible and to allow the

courts greater latitude for interpretations that would further the basic purposes of the statute. 1 A. BARBIERI, PENNSYLVANIA WORKMEN'S COMPENSATION § 308 at 15. In any event it became clear that, from early in the history of this state's workmen's compensation legislation, some concepts central to the recovery of benefits were to be given their legal meaning and scope by the courts. *See, e.g., Hinkle v. H.J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975); *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A.2d 601 (1969); *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 9 A.2d 742 (1939); *Gurski v. Susquehanna Coal Co.*, 262 Pa.1, 104 A. 801 (1918); *Lane v. Horn & Hardart Baking Co.*, 261 Pa. 329, 104 A. 615 (1918); *Dzikowska v. Superior Steel Co.*, 259 Pa. 578, 103 A. 351 (1918).

Under the original Act, as passed in 1915, there was no provision for disease unless it resulted naturally from an accidental and traumatic injury. Accordingly, the statute did not cover "occupational diseases." *Mauchline v. State Insurance Fund*, 279 Pa. 524, 124 A. 168 (1924); *McCauley v. Imperial Woolen Co., supra.*[4] Although a 1915 amendment to the Pennsylvania Constitution[5] had authorized compensation legislation covering occupational diseases, no such compensation law was enacted until 1937,[6] and that as a supplement to the Act of 1915. That attempt to provide coverage for occupational diseases was replaced in 1939 by The Pennsylvania Occupational Disease Act ("Disease Act"),[7] which created a distinct and separate system of compensation for certain types of diseases contracted strictly through exposure in the course of employment. The 1939 Disease Act designated thirteen ailments which would

4. In the *Mauchline* and *McCauley* cases, the term "occupational disease" was judicially defined as meaning a disease which was the result, not of an accidental and sudden injury, but of gradual development from long-continued exposure to natural dangers incident to one's employment. *See also McIntyre v. E.J. Lavino & Co.*, 344 Pa. 163, 165–66, 25 A.2d 163, 164 (1942).

5. Pa. Const. art. 3 § 21 (adopted November 2, 1915), renumbered § 18 by amendment of May 16, 1967.

6. Act of July 2, 1937, P.L. 2714, 77 P.S. § 1101 *et seq.* (repealed).

7. Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. § 1201 *et seq.*

be deemed "occupational diseases." To that list other ailments were later added, as was an omnibus or "catch-all" provision to allow coverage for non-designated diseases if certain conditions are met.

In 1972 The Pennsylvania Workmen's Compensation Act underwent extensive amendment. For example, in section 101 of the Act, 77 P.S. § 1, the word "accident" was excised as a condition for the statute's applicability, and the word "injury" substituted. A corresponding change was made in section 301(a), 77 P.S. § 431, thus eliminating "accident" as a requirement for compensation.

As a further matter, section 301(c) was renumbered to contain sections 301(c)(1) and (2), and amended to read as follows:

(1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean *an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as* naturally results from the injury or *is aggravated, reactivated or accelerated by the injury....*

The term "injury arising in the course of his employment," ... *shall include all injuries caused by the condition of the premises* or by the operation of the employer's business or affairs thereon....

(2) *The terms "injury," "personal injury," and "injury arising in the course of his employment,"* as used in this act, *shall include,* unless the context clearly requires otherwise, *occupational disease as defined in section 108 of this act....*

(Emphasis added.) 77 P.S. § 411 (Supp.1986).

It is important to note that the original statutory definition of "injury," requiring "violence to the physical structure of the body," was deleted by the above amendment. In place of the previous definition, the legislature in 1972 provided a concept of "injury" broad enough in its scope to encompass all work-related harm to an employee "regardless of his previous physical condition." It may now be said, general-

ly, that an employer takes an employee as he comes. Specifically included in the new statutory conception of "injury" is the job-related aggravation, reactivation or acceleration of a pre-existing disease, even if the underlying disease itself was not caused by a work-related injury. Also, by virtue of the 1972 addition of section 301(c)(2), 77 P.S. § 411(2), occupational diseases, as defined in section 108, are included in the concept of "injury" under the Workmen's Compensation Act.

A careful reading of the 1972 version of section 301(c) will reveal that, with the exception of the occupational diseases incorporated by reference, the word "injury" as there used is not itself actually defined. Section 301(c)(1) merely states that "[t]he terms *'injury'* and *'personal injury,'* as used in this act, shall be construed to mean an *injury...."* 77 P.S. § 411(1) (emphasis added). This direction does no more than state that an injury is an injury. Although the 1972 amendment effectively categorizes the circumstances under which an injury is compensable, the word "injury" itself is given no express statutory meaning, as it had prior to the 1972 revision. Thus, just as under the original 1915 Act the courts had to give meaning to the undefined term "accident," *see Lacey v. Washburn & Williams Co., supra; McCauley v. Imperial Woolen Co., supra,* so must the courts now define the meaning of the term "injury" in section 301(c)(1). And, since the latter term no longer has a technical meaning, it must be interpreted according to its common and approved usage. 1 Pa.C.S. § 1903(a); *see Lacey v. Washburn & Williams Co., supra.*

In *Creighan v. Firemen's Relief and Pension Fund Board,* 397 Pa. 419, 155 A.2d 844 (1959), this Court observed that, " 'in common speech the word "injury," as applied to personal injury to a human being, *includes whatever lesion or change in any part of the system produces harm or pain, or a lessened facility of the natural use of any bodily activity or capability.'* " *Id.,* 397 Pa. at 425, 155 A.2d at 847 (emphasis added) (quoting

*Burns' Case*, 218 Mass. 8, 12, 105 N.E. 601, 603 (1914)). Going further, this Court in *Creighan* went on to state that " '[t]he word "injury," in ordinary modern usage, is one *of very broad designation* '," and that " '*its common and approved usage extends to and includes any hurtful or damaging effect which may be suffered by anyone* '." 397 Pa. at 425–26, 155 A.2d at 847 (emphasis in original) (quoting *State ex rel. McManus v. Board of Trustees of Policemen's Pension Fund*, 138 Wis. 133, 119 N.W. 806 (1909)). It is true that *Creighan* was about the rights of an allegedly injured person pursuant to a pension statute, and not the Workmen's Compensation Act. However, the case is greatly significant for our present purposes in that the Court had to give meaning to the word "injury" in the absence of an express statutory definition. Indeed, in *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co., supra,* we embraced *Creighan's* broad definition of "injury" for the purpose of construing section 301(c)(1) of the Act.

Given the striking and, by now, well-known changes wrought by the 1972 amendments of the Act, it is utterly preposterous for the appellant to argue that the current version of section 301(c) is no more than the pre–1972 concepts of compensable injury supplemented by coverage for occupational diseases. This bizarre argument is no doubt the source of the appellant's notion that, since the harm suffered by claimant Pawlosky was not brought within any of the occupational disease provisions, it could not constitute an "injury" within the meaning of that word as used in section 301(c)(1). What the appellant fails to recognize is that, as a result of the 1972 amendment of section 301(c), the term "injury" became a greatly broadened concept, of which occupational disease is but one dimension. Section 301(c)(1) makes it clear that, in determining whether an employee has suffered a compensable injury, his previous condition is of no consequence. So too, this section

makes it clear that the job-related aggravation of *a* disease is a category of "injury" for compensation purposes.[8]

■ Thus, a job-related aggravation of a pre-existing disease is not precluded from being an "injury" under the Act merely because that disease is not an "occupational disease." The appellant's argument in this regard assumes that the legislature, after providing in section 301(c)(1) of the Act for a more expansive concept of "injury", then proceeded to retract the scope of the concept when it included "occupational diseases" by means of section 301(c)(2). A sounder explanation of section 301(c)(2) is that the legislature, by including occupational diseases in the Act's concept of "injury", was attempting to create a unified, integrated compensation law for all work-related harm occurring after the effective dates of the 1972 amendments. *See* 2 A. BARBIERI, *supra,* § 7.01(2) at 12.[9]

■ In the instant case the medical evidence showed, and the referee found, that the claimant had become totally disabled by the effect of chemical fumes at his workplace on his pre-existent asthmatic or pulmonary disease. According to the medical evidence from both parties those fumes aggravated or irritated the claimant's condition and, with each exposure, would produce an adverse physiological reaction called a bronchospasm, during which he would undergo difficulty in breathing. Given the nature of a bronchospasm, each instance in which such an attack was caused by the chemical fumes would constitute an "injury"

8. The phrase "occupational disease-like injury" has frequently appeared in decisions of referees, the Board and in judicial opinions. We must point out that nowhere in the Act is there any such phrase as "occupational disease-like." An ailment is either an occupational disease or it is not. The quoted phrase is meaningless, and it causes confusion.

9. The validity of this explanation is in no way diminished by the fact that the 1939 statute, The Pennsylvania Occupational Disease Act, remains unrepealed. Obviously, one of the main reasons for not repealing it was to make clear that the 1939 statute was to remain in force with respect to occupational diseases contracted prior to the effective date of the 1972 disease provisions of the Workmen's Compensation Act. It is worth noting that the diseases covered by the 1939 statute are essentially similar to those provided for in section 108 of the Workmen's Compensation Act.

within the broad definition set forth in *Creighan, supra,* and adopted in *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co., supra,* for purposes of the Act. That is, the claimant's inhalation of the chemical fumes would bring about an adverse and hurtful change in his system; and such change would cause him to suffer a lessened facility in the natural use of a bodily activity or capability, *i.e.,* breathing. We therefore hold that the adverse effect of the chemical fumes on the claimant's pre-existent asthmatic condition constituted an "injury" within the meaning of section 301(c)(1) of the Act.

Any claimant for workmen's compensation benefits has the burden of establishing all the elements necessary to support an award. *Halaski v. Hilton Hotel,* 487 Pa. 313, 409 A.2d 367 (1979). In that regard, he need only prove two elements: (1) that the injury arose in the course of employment, and (2) that the injury was related to that employment. *Krawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627 (1981); *Halaski, supra.* The fact that the instant claimant proceeded under section 301(c)(1) of the Act, instead of under section 108, can hardly be said to have gained for him an unlawful evidentiary advantage or lessening of his proof burden. Indeed, under the Act, it is the claimant seeking to recover for an occupational disease who is given a procedural or evidentiary advantage. Once such a claimant establishes that he has contracted an occupational disease and that the disease, at or immediately before the date of disability, was a hazard in his occupation or industry, he then becomes entitled to a non-conclusive presumption that his occupational disease arose out of and in the course of his employment. Section 301(e) of the Act, 77 P.S. § 413. A worker claiming for any other type of injury does not have the benefit of such a presumption. He must bear a nevershifting burden of proving not only that his injury arose in the course of his employment but also that the injury was related to it. Based on the record evidence in the instant case and the referee's factual findings with respect thereto, we must conclude that the claimant proved

all that was necessary to entitle him to an award of workmen's compensation.

For the reasons set forth herein, we affirm the order of the Commonwealth Court.

McDERMOTT, J., joins in this opinion and files a concurring opinion.

ZAPPALA, J., joins in this opinion and in the concurring opinion of McDERMOTT, J.

HUTCHINSON, J., files a dissenting opinion.

McDERMOTT, Justice, concurring.

I join in the opinion of the Majority. However, I write separately to express my own comments on this issue. In its original classic conception Workmen's Compensation was compensation for a direct violent injury to a person's physical structure which occurred at the workplace. As the concept evolved, by salutary legislation, it came to embrace more than a direct violent injury. It was recognized that in some occupations the nature of the work and the materials used did injury to the interstices of the body that could remain unknown and undetected. The legislature perceived these possibilities of injury from alien mixtures, uses of materials and methods, theretofore unknown to nature or science, that could pass latent poisons osmotically into the body and, after long years of work, suddenly flash out. In 1939 the General Assembly took the matter in hand and passed the Occupational Diseases Act [1] to cover non-traumatic occupational injury. Then in 1972 the General Assembly revised and redefined the Workmen's Compensation Act [2] and included in one enactment provisions for both direct traumatic injury and occupational disease.

Prior to 1972, in order to establish entitlement to workmen's compensation benefits, a claimant had to prove both

1. Act of June 21, 1939, P.L. 566, No. 284, § 101 *et seq., as amended,* 77 P.S. § 1201 *et seq.*

2. Act of June 2, 1915, P.L. 736, art. 1, § 101 *et seq., as amended,* 77 P.S. § 1 *et seq.*

an *accident* and an injury. *See* Section 301(a), 77 P.S. § 431, Act of June 2, 1915, P.L. 736, art. III, § 301(a), *as amended* (repealed); *Hinkle v. H.J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975). In concert with the "accident" requirement, Section 301(c) defined "injury" and "personal injury" to include "only violence to the physical structure of the body, and such disease or infection as naturally results therefrom." *See* 77 P.S. § 411, Act of June 2, P.L. 736, art. III § 301(c), *as amended* (repealed). In contrast, an employee suffering from an occupational disease, a non-traumatic injury, had to pursue his claim under the Occupational Disease Act.

The 1972 amendments to the Workmen's Compensation Act eliminated the requirement that a claimant's injuries be the result of an accident and merely required that he suffer "an injury in the course of his employment." Section 301(a), 77 P.S. § 431, Act of March 29, 1972, P.L. 159 No. 61, § 11, *as amended.* Contemporaneously, the definition of "injury" under Section 301(c) was amended by the deletion of the requirement that there be "violence to the physical structure of the body." This was replaced with the present definition—"an injury to an employee, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury." In addition, Section 301(c) was renumbered as Section 301(c)(1), and subparagraph 301(c)(2) was added which expanded the term "injury" to include occupational diseases as defined in Section 108. *See* 77 P.S. § 411(1); (2), Act of March 29, 1972, P.L. 159, No. 61, § 7, *as amended.*

It was the purpose of these amendments to make unequivocal the inclusion within the realm of compensable injury, those injuries, which previously required the judicial expansion of "accident" and/or "violence to the physical structure of the body" to render a claim compensable. *See Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978).

In this appeal claimant does not assert that he suffered one of the occupational diseases discussed in Section 108, and he admits that he has not met the burden of proof required under Section 108(n). However, his claim is that unhealthful fumes aggravated a preexisting asthmatic condition, and that such aggravation constituted an injury under the general injury category of Section 301(c)(1). Claimant does not claim that he would have been otherwise injured by the fumes but for his pre-existing condition. The question thus becomes whether a claimant, who has alleged that a pre-existing non-occupational disease was aggravated by long-term exposure to conditions peculiar to the work place, must pursue his claim for compensation under those provisions of the Workmen's Compensation Act which describe occupational diseases, as opposed to the general injury provisions of the Act.

Appellant contends that this case turns on the standards to be applied to a claim where the injury alleged is an aggravation of a pre-existing non-occupational condition. Appellant further contends that this standard should be distinct from other injury situations. The latter contention is erroneous.

As set out above Section 301(c)(1) states unambiguously that an employee may recover for an injury "regardless of his previous physical condition," 77 P.S. 411(1). Thus, the Act makes it clear that an employer takes his employees as he finds them; and regardless of whether an employee experiences a new injury on the employer's premises, or aggravates a pre-existing condition, there is no effect on his entitlement if he can show a causal connection between the injury and the workplace.

Next, appellant contends that claimant's disability is not the result of injury as contemplated in Section 301(c)(1). Rather, appellant argues that compensation for injuries such as the claimant's (which the Board has described as occupational "disease-like") requires a claimant to proceed under Section 301(c)(2) in conjunction with Section 108. Section 301(c)(2) provides in relevant part:

The term injury, personal injury, and injury arising in the course of his employment as used in this act shall include, unless the context clearly requires otherwise, occupational diseases as defined in Section 108 of this act:
. . .

77 P.S. § 411(2). Section 108 sets out sixteen specific occupational diseases, subsection (a)–(m); (o)–(q), and one general category, subsection (n), which provides for inclusion of:

All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population.

77 P.S. § 27.1 (a)–(q).

Appellant's argument basically construes Section 301(c)(2) as a modification of Section 301(c)(1), rather than an expansion. At first glance that argument has some appeal. However, when these sections are considered in the overall context of the Act, and bearing in mind the remedial purposes sought to be furthered by the Act, it cannot be accepted.

In construing a statute we are governed by the Statutory Construction Act of 1972.[3] That Act provides, *inter alia,* the following rules: "[T]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly;"[4] "[W]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering among other matters .. the mischief to be remedied [and] the object to be obtained;"[5] and statutes other than those specifically referred to in 1 Pa.C.S. § 1928(b)[6] "shall be liberally construed to effect their objects and to promote justice."[7]

3. Act of December 6, 1982, No. 290 § 3 *et seq.*
4. 1 Pa.C.S. § 1921(a).
5. 1 Pa.C.S. § 1921(c).
6. The Workmen's Compensation Act is not of the type of statute referred to in Section 1928(b).
7. 1 Pa.C.S. § 1928(c).

As the majority notes, the Workmens' Compensation Act *does not* contain any category of occupational "disease-like" disabilities. What the Act does recognize is certain specific diseases which have been accepted as occupational diseases (e.g., silicosis, asbestosis); [8] and an open category of other diseases, which may in the future warrant specific inclusion, but at the time of the drafting of the statute were not well recognized.[9] For these latter diseases the legislature wisely left the door open, such that workers stricken with yet undiscovered industry-related diseases will not be ignored. The significance of establishing that a claimant has an occupational disease under Section 108 is that the claimant then becomes presumptively entitled to benefits. *See* Section 301(e), 77 P.S. § 413.[10]

It is appellant's position, however, that Section 108 is intended to accomplish more than merely raising the presumption of entitlement. Appellant construes Section 108 as the exclusive means by which a claimant must prove entitlement for an insidious disease. For the reasons set forth below this exclusivity argument must be rejected.

The categories described in Section 108 are not the basis for entitlement to benefits; rather they are a method of establishing an injury to be benefited. By establishing the existence of an occupational disease under Section 108, the claimant is then cloaked with a presumption that his injury "arose out of and in the course of his employment." Section 301(e), 77 P.S. § 413. Section 108(n) is a method for securing that presumption. If its requirements are met the

---

8. *See* Section 108 (a)–(m), (*o*)–(q); 77 P.S. § 27.1(a)–(m), (*o*)–(q).

9. *See* Section 108(n); 77 P.S. § 27.1(n).

10. Section 301(e) provides:

If it be shown that the employe, at or immediately before the date of disability was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.
77 P.S. § 413.

disease alleged then, in effect, becomes an occupational disease under Section 108, and its etiology is presumed, thereby reducing the burden of proof that the injury occurred at the workplace.

On the other hand, a claimant proceeding solely under Section 301(c)(1) enjoys no such presumption. Rather he must prove by unequivocal evidence that he was injured, and that the injury "arose in the course of his employment and was related thereto." Section 301(c)(1), 77 P.S. § 411. *Krawchuk v. Philadelphia Electric Company*, 497 Pa. 115, 439 A.2d 627 (1981). This burden, as is evidenced by the great number of unsuccessful cases which we see in our system, is not a mere perfunctory burden. *See Commonwealth, Workmen's Compensation Appeal Board v. Lewis*, 508 Pa. 360, 498 A.2d 800 (1985).

The suggestion that a claimant who seeks coverage for an insidious disease has a lesser burden under the general injury provision of the Act must be rejected. A claimant who seeks coverage under this provision stands alone, and seeks to establish that he, regardless of all others, was injured as a result of his employment. Indeed, since this claimant must proceed without the benefit of any presumptions he may very well have a greater burden of proof than one who can establish his eligibility by reference to Section 108.

Moreover, to accept appellant's position would be to condone the anomalous situation whereby a claimant could be denied benefits merely because the disease with which he was afflicted was not yet associated with his industry, even though he could unequivocally establish that he suffered a disease caused by a condition in the employee's workplace. We cannot accept, under the humanitarian purpose of the Act, that any injury proven to have occurred at a workplace is left unprovided. The methods of proving such an injury may vary, but the entitlement to benefits for proven injury cannot be denied because there are different options for proof.

Hence, the inhalation of poisonous fumes can cause injuries and where found, whether under Section 301 or Section 108, they are compensable. The Board's concept that entitlement is denied because proof fails under Section 108(n), is a confusion of the means with the end. An injury at the workplace is compensable if it occurred at the workplace. Under Section 301, proofs of that injury may be a heavier burden than required under 108 and 108(n), but because 108 and 108(n) cannot be proven does not mean that Section 301 proofs are denied a forum. Section 108 and 108(n) provide options for proof, and should not be construed as a denial of the right to prove an injury.

ZAPPALA, J., joins in this concurring opinion.

HUTCHINSON, Justice, dissenting.

I dissent. I believe that the majority's decision largely emasculates the requirements section 108(n) imposes for proving an unenumerated occupational disease. By inserting section 108 into the Workmen's Compensation Law, the legislature intended comprehensively to provide for individuals disabled due to occupational diseases. Section 108(n) provided for occupational diseases not recognized at that time. Under it, a claimant must show that he is exposed to the disease as a result of his employment, that the disease is causally related to his employment and that it it has a statistically greater incidence among persons engaged in his occupation than it does among the general public. The legislature could hardly have intended that we circumvent its careful provisions by allowing recovery for aggravation of any disease through the general provisions of section 301 defining injury. By coupling together sections 301(c)(1) and 301(c)(2) to define injury as including aggravation of non-work related, pre-existing diseases, the majority has done just that. The legislature's intent in enacting the 1972 amendments to section 301(c), elimination of the former statute's accident requirement for all injuries, is ignored by this broad construction. Considering this background, I believe the specific provisions of section 108(n) should over-

ride the general provisions of section 301(c) in accordance with the usual rules of statutory construction. 1 Pa.C.S. § 1933.

I find no evidence that the legislature embraced a "take the worker as you find him" approach with respect to occupational diseases. Instead, in section 108(n), it required a substantial correlation between the disease and employment. Aggravation of a pre-existing disease is not consistent with the approach taken in section 108(n). Our current law eschews magic words and requires some substantial connection between the injury and the employment. *See Kusenko v. Republic Steel Corp.*, 506 Pa. 104, 484 A.2d 374 (1984). Moreover, the evidence in this case showed that appellee's condition was also subject to aggravation by many common substances, including cigarette smoke and hair spray. In the face of section 108(n), it seems wrong to me to impose upon this employer the burden of compensating appellee for a disease which is not peculiar to his occupation. The diseases included in section 301(c)(2)'s definition of injury should be limited to diseases peculiar to an industry and not extended to those which commonly afflict the general population and are subject to aggravation by any number of substances commonly found in that part of the earth on which we live.

Finally, I suspect the economic implications of the majority's decision will have a severe impact on both present employers and future prospective employees who suffer from common conditions which are non-disabling but subject to aggravation by a broad range of common substances. The extent of that impact is necessarily unknown to this Court and cannot be evaluated within the context of a particular case record. It is clear to me, however, the majority works a major change in our compensation law. As such, I believe it would be wise to leave that change, with its potentially huge economic implication, to more explicit legislative direction than I find in the current statute. The legislature is, I believe, better equipped to investi-

gate and balance the interests, human and eocnomic, which are involved in this issue than we are.

Unlike the majority, I find appellant's arguments neither preposterous nor bizarre. They seem to me to reflect the legislature's decision to limit recovery of benefits for occupational diseases. Today's decision is likely to wreak havoc with those limits.