648 A.2d 83

**WESTINGHOUSE ELECTRIC CORPORATION and
Gates McDonald & Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (KLOSHEN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 17, 1994.

Decided Sept. 6, 1994.

304

Anthony J. Plastino, II, and Melinda Sala Lang, for petitioners.

Robert J. Pasquarelli, for respondent.

Before McGINLEY and NEWMAN, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

Westinghouse Electric Corporation (Westinghouse) appeals from a decision of the Workmen's Compensation Appeal Board affirming the referee's decision which awarded worker's compensation benefits to Harry J. Kloshen (Kloshen). We affirm.

Kloshen was employed by Westinghouse from November 3, 1977, until Westinghouse sold the plant to Liberty Polyglas on November 7, 1987. Kloshen continued working with Liberty Polyglas after the sale, retaining the same duties as those he had with Westinghouse. Kloshen first worked with Westinghouse as a protrusion operator and later became a co-poly inspector. He testified that the job of co-poly inspector involved the aspects of mixer, kneader, inspector and press helper. Kloshen commenced working as a press helper in 1984 and 1985 and from that time on was subjected to various dusts and fumes in his workplace.

In 1985, Kloshen began to experience abdominal pain, nausea and vomiting. He was hospitalized from August 15, 1985, to August 21, 1985, and on three occasions between August 25,

1985, and October 20, 1985. Test results during those occasions revealed no clear etiology of the cause of Kloshen's symptoms. In 1986, and 1988, needle biopsies of Kloshen's liver showed the presence of a fatty liver. Deposition of Michael J. Hodgson, M.D. (Hodgson Deposition), October 18, 1988, at 59; Reproduced Record (R.R.) at 343a.

On February 22, 1988, Kloshen filed a claim petition for workmen's compensation benefits against both Westinghouse and Liberty Polyglas alleging abnormal liver function due to exposure to toxic chemicals in the workplace. Hearings were held in the matter and Kloshen testified that he first became aware that his condition may be work related when he read a January 14, 1988, letter from Michael J. Hodgson, M.D. (Dr. Hodgson), one of his treating physicians. Kloshen presented the testimony of Dr. Hodgson, who first examined Kloshen on February 6, 1988. Dr. Hodgson stated that he decided to employ a test challenge to determine the effects of exposure to co-poly on him. The test challenge involved examining the effects on Kloshen's liver during periods when he was exposed to co-poly and when he was not. To this end Dr. Hodgson removed Kloshen from work from January 21, 1988, until February 19, 1988 and noted an improvement in his liver function. Dr. Hodgson further testified that when Kloshen resumed working with the co-poly from March 11, 1988, through March 21, 1988, the symptoms returned. Once again Kloshen was removed from the work place and Dr. Hodgson noted improvement in Kloshen's liver functions. Dr. Hodgson opined that the exposure to co-poly was the reason Kloshen's disease became clinically active.

Westinghouse presented the testimony of Clarence W. Bickerstaff (Bickerstaff), manager of industrial hygiene for Westinghouse, and Dr. John M. Wood (Dr. Wood), Kloshen's treating physician since August, 1985. Bickerstaff stated that members of his staff had taken and tested air samples from the plant in 1978, 1983, 1985, and 1986. Each sample reflected levels below OSHA standards. Dr. Wood agreed with Dr. Hodgson that Kloshen suffered from fatty liver but could not opine whether the cause was work related.

Liberty Polyglas offered the testimony of Dr. Daniel C. Braun, M.D. (Dr. Braun). Dr. Braun opined, based upon a review of Kloshen's medical records, that his disease was not work related. Liberty Polyglas also submitted a report on August 18, 1989, from Dr. Berry Kisloff, M.D. which corroborated Dr, Braun's opinion.[1]

In a decision and order dated December 29, 1989, the referee found the testimony of both Kloshen and Dr. Hodgson to be most credible. The referee further found that on August 15, 1985, Kloshen suffered a work-related injury "in the nature of 'fatty liver hepatitis' caused by his continual exposure to unsaturated aliphatic hydrocarbons which rendered him totally disabled from his pre-injury employment." Referee's Decision, December 29, 1989, Finding of Fact (F.F.) No. 19, at 6. The referee granted Kloshen's claim petition against Westinghouse and dismissed the claim against Liberty Polyglas. Westinghouse appealed and in an opinion dated March 31, 1992, the Board remanded the decision for a calculation of Kloshen's average weekly wage. The referee issued a remanded decision on September 30, 1992, and Westinghouse appealed alleging that the referee erred in concluding that Kloshen met his burden of proving causation and in concluding that Westinghouse is the responsible employer. In an opinion and order dated December 17, 1993, the Board affirmed the referee's decision. Westinghouse appeals.

On appeal Westinghouse raises the following issues: 1) whether the referee and the Board erred in finding that Kloshen proved causation; 2) whether the referee and the Board erred in concluding that Westinghouse is the responsible employer; 3) whether the referee's findings and conclusions are supported by substantial competent evidence; 4) whether the referee improperly excluded after discovered evidence; and 5) whether unrequested relief was granted to Kloshen.

Initially we note that our scope of review is limited to a determination of whether constitutional rights were violated,

1. The report was objected to by Kloshen but the objection was overruled.

whether an error of law was committed and whether the necessary findings are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990).

The first issues raised by Westinghouse concern whether the referee and the Board erred in finding that Kloshen met his burden of proving causation and further whether an error was committed with the finding that Westinghouse is the responsible employer. Westinghouse argues that such findings are not based upon substantial competent evidence. We disagree. We recognize that, in a worker's compensation proceeding the burden of proving that an injury occurred in the course of employment and was related to that employment falls upon the employee. *Volterano v. Workmen's Compensation Appeal Board (Allied Corp. and Travelers Ins. Co.)*, 149 Pa.Commonwealth Ct. 222, 613 A.2d 61 (1992), *aff'd*, 536 Pa. 335, 639 A.2d 453 (1994).

In finding that Kloshen met his burden of establishing causation, the referee accepted the testimony of Dr. Hodgson. Dr. Hodgson opined that Kloshen's liver disease originated in 1985 with exposure to toxic chemicals in the workplace. The record reveals that Kloshen was working as a press helper for Westinghouse in 1985. This also coincided with his continuous exposure to the chemicals. "The referee, as the ultimate fact finder, has wide latitude in weighing the probative value of offered testimony and may, in proper circumstances, reject even uncontradicted testimony." *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School District)*, 82 Pa.Commonwealth Ct. 469, 473, 474 A.2d 1236, 1238 (1984). Accordingly, we may not disturb such findings.

Westinghouse also argues that the referee and the Board erred when they failed to relate our Supreme Court's holding in *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)*, 514 Pa. 450, 525 A.2d 1204 (1987). In *Pawlosky*, the claimant was periodically exposed to chlorine fumes and other chemical agents over a twenty-three

year period while working for Latrobe Brewing Company. The claimant suffered from a lung infection as well as an asthmatic condition which he attributed to such exposure and filed a claim petition alleging an occupational disease. He subsequently amended the petition to assert entitlement under section 301(c) of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411. The Court held that "a job related aggravation of a pre-existing disease is not precluded from being an 'injury' under the Act merely because that disease is not an 'occupational disease.'" *Id.* at 461, 525 A.2d at 1210. Westinghouse asserts that since *Pawlosky* does not address a situation where multiple employers are involved it does not apply to the present case. We disagree. The question of whether a claimant has suffered an "injury" under the Act is resolved in the same manner when there are multiple employers or when there is one employer. We conclude the reasoning in *Pawlosky* is applicable to the present case.

 Next, Westinghouse argues that the referee's findings are ambiguous and unsupported by substantial competent evidence. Specifically, Westinghouse argues that Findings of Fact Nos. 19 and 20 are ambiguous.[2] Westinghouse asserts that the conclusion in Finding of Fact No. 19 that Kloshen suffered "recurrences" of his work injury while working for Liberty Polyglas on January 21, 1988, March 24, 1988, and June 16, 1988, contradict Finding of Fact No. 20. Finding of Fact No. 20 contains the referee's finding that Westinghouse is the responsible employer. There is no ambiguity when Finding of Fact No. 19 is read in context with the entire decision. Dr. Hodgson's testimony reveals that January 21 and March 24, 1988, were dates when Kloshen was removed

---

**2.** Finding of Fact Nos. 19 and 20 state:

 19. Although there may have been other dates not covered, the record supports a finding that the claimant had recurrences of his work injury, which continued to aggravate his underlying condition, on January 21, March 24, and June 16, 1988. June 16 being claimant's last date of employment.

 20. The Referee finds that Westinghouse Electric Corporation is a responsible defendant in these proceedings.

Referee's Decision, F.F. Nos. 19 & 20, at 6.

from work and accordingly from exposure to the chemicals. June 16, 1988, was Kloshen's last date of employment. As Dr. Hodgson testified, Kloshen's liver function improved following removal from work on each of these occasions. Further, the record reveals that Kloshen's initial symptoms and hospitalization (for which an eventual liver biopsy indicated a fatty liver) occurred while he was employed with Westinghouse. It is also important to note that there was no change in Kloshen's exposure to the chemicals found to be the cause of his disability following the sale of the plant to Liberty Polyglas. This court has held that an aggravation of a prior injury constitutes a new injury and the employer at the time of aggravation is responsible, whereas a recurrence of a prior injury is the responsibility of the employer at the time of the original injury. *See Swartz v. Workmen's Compensation Appeal Board (Dutch Pantry Restaurant)*, 117 Pa.Commonwealth Ct. 47, 543 A.2d 201 (1988), *petition for allowance of appeal denied*, 522 Pa. 581, 559 A.2d 41 (1989). The referee's decision read as a whole, even though finding of fact number 19 contains the term "aggravation", is consistent with the finding that Kloshen suffered a recurrence of his disability and accordingly we find no error in the referee's decision.

■ Westinghouse's fourth argument is that the referee improperly excluded after-discovered evidence. On remand to the referee, Westinghouse sought to reopen the record in light of a letter written by Dr. Hodgson on May 11, 1990, and a September 11, 1992, letter written by David Y. Liang, M.D. (Dr. Liang). The letter written by Dr. Hodgson states that Kloshen's liver had not improved since his cessation of work, while the letter from Dr. Liang notes that Kloshen was hospitalized from March 28, 1992, to April 1, 1992, for treatment of Gastroparesis, Reflux esophagitis, Gastroenteritis and Subsegmental atelectasis of the lung. Initially, we note that the Board's remand opinion stated the following: "Additionally, we conclude that the remainder of the Referee's findings are sufficiently detailed and unambiguous, so the Referee need only address the issue of the Claimant's average weekly wage on remand." Board's Opinion, March 31, 1992, at 4. We have

held that "[a] referee should restrict remand proceedings to the purpose indicated by the Board's remand order; to allow him to do otherwise will result in unnecessary confusion." *Glabern Corp. v. Workmen's Compensation Appeal Board (Moccia)*, 84 Pa.Commonwealth Ct. 381, 384, 479 A.2d 77, 80 (1984). This Court has held that a rehearing will not be granted so as to permit a party to strengthen weak proofs already presented. *Pasquarelli v. Workmen's Compensation Appeal Board (Western Electric)*, 130 Pa.Commonwealth Ct. 228, 567 A.2d 792 (1989). In the present case, Dr. Hodgson testified that Kloshen's condition could get worse.[3] Westinghouse also does not allege a relationship between the hospitalization referred to by Dr. Liang and the present case. Accordingly, Westinghouse's fourth argument must fail.

▮▮▮ Finally, Westinghouse argues that the referee and the Board erred in granting relief which was not prayed for in Kloshen's petition. Westinghouse asserts that the error resulted when Kloshen was granted benefits for the periods when he was not working starting August 15, 1985, because his petition stated the date of injury as January 14, 1988, "and prior thereto". In its brief Westinghouse argues that it "was totally surprised when the Referee awarded disability benefits to Claimant going back to 1985". Westinghouse Brief at 63. This argument is meritless. Initially, we note that strictness of pleadings in workmen's compensation cases is not required. *Dunmore School District v. Workmen's Compensation Appeal*

---

3. Ernest W. Baum, Esquire, counsel for Westinghouse, to Dr. Hodgson:
 Q: And the disorder that Mr. Kloshen suffers from is completely reversible providing he stays away from alcohol and other chemicals?
 A: We believe that such things are reversible, but, in fact, it is not clear how rapidly they are reversible. In addition, there were on his repeat biopsies some changes that raise the question of a complication. Once you get granulomatous changes on liver biopsy, that implies that the liver may have developed an immunological reaction and not just a simple toxicity reaction. There was no evidence—there were none of the prognostic indicators, and I would assume over time this will completely resolve. I don't know how rapidly.
 Q: What if Mr. Kloshen would go from his 187 pounds back up to his 250 pounds? What would you expect to see in his liver functions?
 A: I would assume there would be some worsening.
 Hodgson Deposition at 67–68; R.R. at 351a–52a.

*Board (Lorusso),* 89 Pa.Commonwealth Ct. 368, 371, 492 A.2d 773, 775 (1985). Further, before the referee Kloshen testified that he was hospitalized from August 15, 1985, to August 21, 1985, and on three occasions in the subsequent two months with symptoms which Dr. Hodgson opined were due to a fatty liver. This testimony was not objected to by Westinghouse nor did it object to having notice of Kloshen's disability [4]. Thus it appears Westinghouse waived this issue before the referee by agreeing that it had notice of Kloshen's injury and by not objecting to both Kloshen's and Dr. Hodgson's testimony regarding Kloshen's symptoms and periods of disability when the plant was owned by Westinghouse. Westinghouse's fifth argument must therefore fail.

Accordingly we affirm.

## ORDER

AND NOW, to wit, this 6th day of September, 1994, the order of the Workmen's Compensation Appeal Board at No. A92–2688 and dated December 17, 1993, is affirmed.

[4]. At a hearing in the matter held on April 19, 1988, the following exchange took place between Amiel Caramanna, Jr., Esquire, counsel for Kloshen, Ernest Baum, Esquire, counsel for Westinghouse, and the referee:

MR. CARAMANNA: Okay. Mr. Referee, certified letters were sent to the respective Defendants on February 5th, 1988, informing them that Mr. Kloshen had been informed, on January 14th, 1988, that the chemicals he was exposed to were causing his liver problem.
REFEREE COFFROTH: February 5th, you say?
MR. CARAMANNA: Yes, sir.
REFEREE COFFROTH: Okay. Any dispute as to that, do you have notice?
MR. BAUM: Yeah, we do.
Notes of Testimony, April 19, 1988, at 14.