**SUPERIOR PRECAST, INC.**

v.

**SAFECO INS. CO. OF AMERICA.**

**No. CIV. A. 99–2816.**

United States District Court, E.D. Pennsylvania.

Oct. 4, 1999.

Paul A. Logan, Powell, Trachtman, Logan, Carrle, Bowman and Lombardo, King of Prussia, PA, for Superior Precast, Inc., Plaintiffs.

Robert J. Blumling, David A. Levine, Thomas M. Ferguson, Blumling & Gusky, LLP, Pittsburgh, PA, Peter J. Weidman, Kaufman, Coren, Ress & Weidman, P.C., Philadelphia, PA, for Safeco Insurance Company of America, Defendant.

### MEMORANDUM

GILES, Chief Judge

Superior Precast, Inc. ("Superior") brings this diversity action to recover from Safeco Insurance Co. of America ("Safeco"), as surety, money owed for materials and work that Superior performed on a construction project in Allegheny County, Pennsylvania. Now before the court are three separate motions of Safeco. For the reasons stated below, this court denies Safeco's Motion to Dismiss for Improper Venue, pursuant to Fed.R.Civ.P. 12(b)(3); denies Safeco's Motion to Transfer the Case for the convenience of the parties, pursuant to 28 U.S.C. § 1404(a); and grants Safeco's Motion to Dismiss Count II of the Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6).

## Background

### Factual Background

According to the Amended Complaint, non-party A & L, Inc. ("A & L") was the general contractor on a highway construction project located in Allegheny County, Pennsylvania, known as Phase I of the Airport/Busway/Wabash HOV facility. The Port Authority of Allegheny County was the project owner. Superior negotiated directly with A & L and alleges that it understood that it was to be designated as the supplier of sound wall materials for the project. Safeco issued a labor and material payment bond on behalf of A & L as general contractor and for the protection of subcontractors, materialmen, and suppliers providing labor, equipment, and materials for the project.

Although Superior generally received purchase orders for sound wall materials from Global Consultants, Inc. ("Global"), a subcontractor, Superior alleges that it dealt directly with A & L on all issues relating to the sound wall materials. Various problems allegedly arose during the course of the construction project, relating primarily to timely payment to Superior and increased costs of production due to limitations placed on Superior's ability to use anticipated suppliers and subcontractors for its work. Superior and A & L negotiated directly to resolve some of the payment issues, meeting in Superior's plant in Pottstown, Pennsylvania and exchanging correspondence in an effort to arrange an agreement. Superior alleges that it completed its last substantial work on the project in December 1998 and avers that all labor and materials it furnished were approved and accepted by the Port Authority. According to the Amended Complaint, however, A & L and/or Global refused to pay for all costs and materials, leaving an unpaid balance of $761,109.55. In September 1998, Superior provided written notice of its claim for unpaid balances to the Port Authority, A & L, and Safeco, as surety for A & L.

## Procedural History

Superior commenced the instant action against Safeco on March 9, 1999 in the Court of Common Pleas of Montgomery County; Superior filed a Complaint in that court on May 14, 1999. On June 3, Safeco removed the case to this court, pursuant to 28 U.S.C. § 1441(a), invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Safeco then filed a motion, seeking relief from this complaint on any of three alternative grounds: 1) dismissal, pursuant to Fed.R.Civ.P. 12(b)(3), for improper venue; 2) transfer of the case to the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a), for the "convenience of parties and witnesses, in the interest of justice;" and 3) dismissal, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim. In the last alternative, Safeco moved, pursuant to Fed.R.Civ.P. 12(e), for a more definite statement of the plaintiff's claim. Superior responded to the two venue motions and filed its Amended Complaint, rendering the Rule 12(b)(6) and 12(e) motions moot. Because the Amended Complaint did not cure any venue problems, the venue motions have not been rendered moot and remain properly before this court. Safeco then filed a second motion pursuant to Fed.R.Civ.P. 12(b)(6), seeking to dismiss only Count II of the Amended Complaint, which asserts a claim under the Pennsylvania Bad Faith Statute, 42 Pa.C.S. § 8371; Safeco argues that a § 8371 action, as a matter of law, is unavailable in the instant action to recover against a surety.

## Discussion

This court has jurisdiction over this matter based on diversity of citizenship between the corporate parties, where Superior is a Michigan corporation with its principal place of business in Pottstown, Pennsylvania, and Safeco is a Washington corporation with its principal place of business in Seattle, Washington. *See* 28 U.S.C. §§ 1332(a)(1), 1332(c)(1) (stating that a corporation is a citizen for diversity purposes of its state of incorporation and the state in which it has its principal place of business).

## Motion to Dismiss for Improper Venue

■ Safeco first argues, pursuant to Fed.R.Civ.P. 12(b)(3), that venue is not properly laid in this judicial district and this matter therefore should be dismissed or transferred to another district. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong ... district shall dismiss, or if it be in the interest of justice, transfer such case to any district ... in which it could have been brought."). Safeco removed the case to this court because it is the district embracing Montgomery County, the place where the action was pending. *See* 28 U.S.C. § 1441(a) (providing for removal to the district court for the district embracing the place where the action is pending). Safeco's removal of the case to this court did not waive its right subsequently to object to this court's venue; rather, this court after removal takes up the case where the state court procedurally left off and can address procedural issues such as venue. *See Fillmore Mercantile, Inc. v. ETM Entertainment Network, Inc.,* No. 98–4133, 1999 WL 178547, *5 (E.D.Pa.1999) (Waldman, J.) (quoting *Dunn, By and Through Tatum v. Skate 22, Inc.,* 1997 WL 786439, *1 (E.D.Pa.1997) (Reed, J.)); *see also Lambert v. Kysar,* 983 F.2d 1110, 1113 n. 2 (1st Cir.1993) (stating that it is well settled that the filing of a removal petition, without more, does not waive the right to challenge venue in federal court); 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3726 (3d ed.1998).

■ Contrary to Safeco's suggestion, as the defendant, it bears the burden of proving its affirmative defense and showing that venue is improper on a motion to dismiss. *Myers v. American Dental Ass'n,* 695 F.2d 716, 724–25 (3d Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453,

77 L.Ed.2d 1333 (1983); *Frontier Ins. Co. v. National Signal Corp.*, No. 98–4265, 1998 WL 778333, *4 (E.D.Pa.1998) (Giles, J.). As noted *supra*, this court's jurisdiction is founded solely on diversity. In such a case, venue is controlled by 28 U.S.C. § 1391(a) and is proper only in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

A plaintiff need satisfy only one of the three in order for venue to be proper. Superior argues that venue is proper under both (a)(1) and (a)(2).

*§ 1391(a)(1)*

Because Safeco is the only defendant in this case, all the defendants do reside in Pennsylvania. The first element of § 1391(a)(1) is satisfied. As to the second element, the question of where a corporate defendant such as Safeco resides for purposes of § 1391(a)(1) is controlled by 28 U.S.C. § 1391(c), which provides:

[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.

Pennsylvania is a state that has more than one judicial district. This court must undertake a two-part inquiry: 1) Is Safeco subject to personal jurisdiction in Pennsylvania; and 2) If the Eastern District of Pennsylvania were a separate state, is Safeco subject to personal jurisdiction here. If the answer to both questions is yes, then Safeco is deemed to reside in the Eastern District of Pennsylvania and venue is proper in this district. *See Zinn v. Gichner Sys. Group*, No. 93–5817, 1994 WL 116014, *2 (E.D.Pa.1994) (Yohn, J.). There is no question that Safeco is subject to personal jurisdiction in this state and Safeco does not contend otherwise.

 This court thus addresses the second, and central, question by engaging in a fictitious personal jurisdiction analysis. *Id.* A federal district court sitting in diversity exercises personal jurisdiction over non-resident defendants to the extent permissible under the laws of the state in which the court sits. *Grand Entertainment Group v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3d Cir.1993). Personal jurisdiction may be specific, in that the cause of action arises from the defendant's activities within the forum state, or general, in that the defendant has sufficient continuous and systematic contacts with the forum state as to be subject to jurisdiction there for all purposes. *See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). Because this court concludes that there is general jurisdiction over Safeco in this district, it will not reach the question of specific jurisdiction.

 Under Pennsylvania law, a court may have general jurisdiction over a foreign corporation that carries on "a continuous and systematic part of its general business within this Commonwealth." 42 Pa. C.S. § 5301(a)(2)(iii). Pennsylvania law also permits courts to exercise jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 42 Pa.C.S. § 5322(b). Due process permits the assertion of general jurisdiction over defendants with continuous, systematic, and substantial general business con-

tacts or affiliations with the forum, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Provident Nat'l Bank*, 819 F.2d at 437, particularly where those contacts are "central to the conduct" of the defendant's business or those contacts are the "bread and butter of its daily business." *Id.* at 438. As a general rule, this looks to whether a defendant regularly solicits business in the particular forum or advertises in a way specifically targeted at the forum market. *See Zinn*, 1994 WL 116014, at *4 (citing cases). The evidence before this court shows that Safeco maintains a regional business office in Bala Cynwyd, Pennsylvania, within this judicial district. It also advertises the fact that it has several surety agents located and available in and around the City of Philadelphia to issue and provide bonds. These are sufficiently continuous, substantial, and systematic, and sufficiently central to Safeco's business of providing surety bonds, to satisfy the statutory and constitutional requirements for general jurisdiction within this district.[1] Thus Safeco would be subject to general personal jurisdiction in the Eastern District of Pennsylvania if this district were its own state, Safeco can be said to reside in this district, and this district is a proper venue pursuant to §§ 1391(a)(1) and (c).

*§ 1391(a)(2)*

■ Alternatively, venue is proper in this court if substantial events or omissions relating to this action occurred in this judicial district. 28 U.S.C. § 1391(a)(2). Venue is concerned with the location of the events and omissions underlying the claim and requires that those

events be "substantial" to the dispute; events or omissions having only a tangential connection with the dispute are not enough. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994). Importantly, a court considering § 1391(a)(2) is not required to determine the "best" forum or the forum with the most substantial events, *id.;* rather more than one federal district may be the site of substantial events or omissions and therefore more than one federal district may be a proper venue in a given case. *See BABN Technologies Corp. v. Bruno*, 25 F.Supp.2d 593, 597 (E.D.Pa.1998) (Reed, J.); *School Dist. of Philadelphia v. Pennsylvania Milk Mktg. Bd.*, 877 F.Supp. 245, 249 (E.D.Pa.1995) (Joyner, J.).

In assessing the substantiality of the events or omissions, this court must examine the nature of the dispute. *Cottman*, 36 F.3d at 295. This action is at bottom one for breach of the supply contract and recovery of moneys owed on the contract between Superior and A & L or Global; the relevant events and omissions surrounding that supply contract are the subject of the venue inquiry.[2] Courts in this district generally look to the place of performance of a contract in determining whether venue is proper. *See J.L. Clark Mfg. Co. v. Gold Bond Corp.*, 629 F.Supp. 788, 791 (E.D.Pa.1985) (Troutman, J.) (citing Moore's Federal Practice, § 0.1425.2 at 1435 (2d ed.1985)); *Frontier Ins.*, 1998 WL 778333, at *5 (citations omitted).

■ In the instant case, fabrication of the sound walls, obviously a substantial part of the performance of a contract to provide materials for the construction contract, occurred at Superior's facility in

---

1. Safeco is correct that venue within one judicial district does not necessarily flow from a corporation being licensed to do business in that state. *See Tranor v. Brown*, 913 F.Supp. 388, 390 (E.D.Pa.1996) (Ludwig, J.) (stating that § 1391(c) ensures that corporate defendants cannot be sued in districts within a particular state with which they have no contacts). But the analysis in the instant case shows that Safeco does have sufficient general business contacts with this particular district as to make venue proper here.

2. Safeco is the defendant solely in its role as the guarantor of A & L's obligations and payments under that contract; the surety agreement between Safeco and A & L that created Safeco's potential liability is not at issue for venue purposes.

Pottstown, Pennsylvania. Attempted negotiations by Superior and A & L to settle and resolve payment and performance disputes under that contract also took place in Pottstown. These events constitute a substantial portion of the controversy underlying this action and thus make venue proper in this district pursuant to § 1391(a)(2). Safeco is correct that other substantial events—namely the highway construction project itself and A & L's failure to send payment—took place in the Western District of Pennsylvania. But as noted *supra*, this court need not decide which forum is the site of more substantial or significant events, only whether the forum in question itself is the site of such events. *See Cottman*, 36 F.3d at 294. The fact that substantial events or omissions also occurred in the Western District does not affect whether substantial events occurred in this district. Such events did occur here and that is sufficient for § 1391(a)(2) purposes.

## Motion to Transfer Venue

Safeco next argues in the alternative that this matter should be transferred to the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a), which provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Safeco is subject to personal jurisdiction throughout the Commonwealth of Pennsylvania and, as discussed *supra*, a substantial part of the events giving rise to this breach of contract action did occur in the Western District of Pennsylvania. Thus this action could have been brought in that district or in this district. The issue now becomes whether the case ought to be transferred.

▮▮▮ The burden of establishing the need for a transfer rests with the movant, Safeco. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). The district court has broad discretion to transfer an action, but transfers should not be liberally granted. *Frontier Ins.*, 1998 WL 778333, at *5 (citing *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F.Supp. 669, 679 (E.D.Pa.1997) (Joyner, J.)). Although § 1404(a) lists three factors impacting the decision to transfer, a district court ruling on a § 1404(a) motion must " 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' " *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3847).

▮▮▮ Courts engage in a balancing of the several private and public interests that are protected by the language of § 1404(a), although there is no definitive formula for the court to follow. *Jumara*, 55 F.3d at 879. The private interests include: 1) plaintiff's forum preference as manifested in the original choice; 2) defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties as indicated by their relative physical and financial conditions; 5) the convenience of witnesses, only to the extent that a witness may be unavailable for trial in one of the fora; and 6) location of books and records, again only to the extent they may be unavailable in one of the fora. *Id.* at 879 (citations omitted). The public interests include: 1) enforceability of any judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) relative administrative difficulties in the two fora resulting from court congestion; 4) local interest in deciding local controversies at home; 5) public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80 (citations omitted).

▮▮▮ Several principles inform this balancing. First, the plaintiff's choice of venue should not lightly be disturbed. *Id.* at 879; *Edwards v. Texaco, Inc.*, 702 F.Supp. 101, 103 (E.D.Pa.1988) (Pollak, J.)

(stating that a "presumption for the plaintiff's choice" operates under § 1404(a)). Second, "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) (emphasis in original, internal quotations marks omitted), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Third, the purpose of transfer is not to shift the inconvenience from one party to the other. *See Frontier Ins.*, 1998 WL 778333, at *5; *Elbeco*, 989 F.Supp. at 679. Finally, and somewhat related, the defendant must show that its alternative forum is more convenient; if factors are in equipoise, transfer is not proper. Balancing these factors in the instant case, this court concludes that Safeco has not carried its burden of showing that the balance of convenience weighs strongly in its favor and that the Western District of Pennsylvania is a substantially more convenient forum so as to warrant transfer. The case therefore will remain in this district.

*Plaintiff's Choice of Forum*

 The first, and central, private interest factor is the plaintiff's choice of forum. This case presents the unusual situation that Superior's initially chosen forum was the Court of Common Pleas of Montgomery County; the case came to this district only through Safeco's choice to exercise its statutory right to remove the case to federal court. Moreover, Safeco argues that it cannot be said to have chosen this forum; it removed the case to this district only because this is the only district to which it could remove. *See* 28 U.S.C. § 1441(a) (stating that a "civil action ... may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending"). Safeco thus argues that the presence of this case in this district should not be accorded the same degree of deference as if Superior had filed the case in this federal district court in the first instance.

This court declines to adopt such a formalistic approach. Venue is concerned with geography and this factor of the § 1404 balancing is concerned with the geographic choice of the plaintiff. Superior plainly sought to litigate this action within a geographic area that is encompassed by this judicial district, Montgomery County, Pennsylvania. The fact that it began the action in state rather than federal court does not change the fact that Superior made that geographic choice, which is subject to deference and should not be disturbed lightly. *See Jumara*, 55 F.3d at 879. The idea that for § 1404(a) purposes a chosen venue encompasses both federal and state courts finds support in cases holding that a contractual forum-selection clause designating a particular geographic area includes both state and federal courts within that geographic area. *See, e.g., Newman/Haas Racing v. Unelko Corp.*, 813 F.Supp. 1345, 1347–48 (N.D.Ill. 1993) (holding that forum selection clause constituted a geographical limitation to the area of northern Illinois, but did not determine that litigation could not take place in state or federal court); *International Ass'n of Bridge Structural and Ornamental Iron Workers v. Koski Constr. Co.*, 474 F.Supp. 370, 372 (W.D.Pa.1979) (holding that forum selection clause establishing venue for any disputes as Erie County, Pennsylvania included both state and federal courts encompassing Erie County, Pennsylvania). In the instant case, Superior chose to litigate in Montgomery County, in southeastern Pennsylvania, and that choice does not lose all relevance solely because Superior initially brought the case in state court and Safeco chose to remove it to the federal court encompassing that county. To hold otherwise would be to create the anomalous situation that a plaintiff's geographic choice is entitled to greater deference based on whether or not it sues in federal court first or whether it has the fortuity of suing a non-diverse defendant in state court. The statutory right of removal, while certainly a limita-

tion on the plaintiff's choice of forum, cannot render the plaintiff's geographic choice entirely meaningless. This court therefore will regard this district as Superior's chosen forum and will accord that choice the proper presumption and deference under § 1404(a).

Safeco also argues that Superior's venue choice is entitled to less deference because none of the operative facts in the case occurred in the forum district. *See Edwards,* 702 F.Supp. at 103. But as discussed *supra,* some substantial operative facts and events did occur in this district—the sound walls were fabricated in Superior's facility in Pottstown and negotiations between Superior and A & L attempting to resolve payment disputes under the contract took place there as well. These are sufficient operative facts in this district to support the operation of the presumption in favor of plaintiff's forum.

*Private Interest Factors*

██ In balancing the other private interests, it is clear that the balance does not weigh strongly in favor of Safeco and that the Western District is not a more convenient venue for this case. The claim arose in both districts—it arose in this district to the extent that the fabrication of the sound walls and attempts to settle payment disputes under the contract occurred in Pottstown; it arose in the Western District to the extent the sound walls were installed in a larger construction project undertaken there. This factor is in equipoise. Similarly, convenience of the parties is in equipoise. This district clearly is more convenient for Superior, being the site of its principal place of business; on the other hand, Safeco suggests the Western District is more convenient for it, since it became a surety in this case through an agent in Wheeling, West Virginia. But transfer cannot simply shift the inconvenience from the defendant to the plaintiff, *see Elbeco,* 989 F.Supp. at 679, as transfer would do in the instant case.

Convenience of the witnesses perhaps slightly favors transfer, but certainly not strongly; this point actually is not clear on the record before this court. While Superior's witnesses are located in this district, a number of witnesses from the non-parties involved in the construction project—the Port Authority, A & L, Global, the construction manager, and others all are located in the Western District. But Safeco has not shown or suggested that those non-party witnesses would be unavailable or unwilling to testify in this district, as it must. *Cf. Jumara,* 55 F.3d at 879 (stating that the convenience of witnesses is an issue only to the extent that they are unavailable in one district or another). Nor has Safeco met its burden of identifying which particular witnesses will benefit from transfer, which it can do by naming witnesses, showing the nature and the materiality of their testimony, and indicating the hardships they would suffer having to testify in this district. *See United States ex rel. Penizotto v. Bates East Corp.,* No. 94–3626, 1996 WL 417172, *3 (E.D.Pa. 1996) (Reed, J.). Safeco does provide a lengthy list of potential witnesses from A & L, the Port Authority, and others who are located in the Western District and there are indeed more witnesses there than here. But Safeco provides nothing to indicate how or why their testimony is material, that they would be unavailable to testify in this district, or how or why they would suffer undue hardships having to testify in this district.

Finally, the location of books, records, and other documentary evidence and sources of proof appears to favor Superior or at worst to be in equipoise. Any documents related to the negotiation and execution of the contract between Superior and A & L, any purchase orders, any information about the fabrication of the sound walls and about the attempted resolution of payment disputes can be found at Superior's place of business in Pottstown and will readily be available in discovery. Other documents related to the construction project as a whole, the acceptability of the sound walls in that project, and any

defenses to the breach of contract action perhaps are in the possession of the non-parties in the Western District, but Safeco has not described the nature or materiality of such documents, indicated that they cannot also be found at Superior's location in Pottstown, or indicated that such documents otherwise would be unavailable in this district.

*Public Interest Factors*

The public interest factors weigh strongly against transferring the case from this district, since none shows that the Western District is a better forum than this district. Because both districts are located in the same state, this court or a trial judge in the Western District will be equally familiar with Pennsylvania law, which is the applicable law in this diversity case. Further, the public policies of the districts will be the same and a judgment rendered in either district will be equally enforceable.

Importantly, there is a strong local interest in this case remaining in this district, since a resident of the district allegedly was injured and seeks a judicial remedy for that injury; this district has a strong interest in protecting its residents and providing a forum for resolution of that dispute. *See Elbeco,* 989 F.Supp. at 679. The relative administrative difficulties also weigh in favor of keeping the case here. This appears to be a straightforward claim for breach of the supply contract and the attempt to hold the surety liable for its principal under a surety agreement; this case is unlikely to involve great administrative difficulties or involve great difficulty for this court. There is no indication that this case would be substantially easier or more expeditious being prosecuted in the Western District than in this district.

## Motion to Dismiss Count II of the Amended Complaint

Having concluded that this case, regardless of which pleading controls, is proper in this district both as a matter of statutory venue requirements under § 1391(a)

and of the convenience of the parties and the interests of justice, this court turns now to Safeco's Motion to Dismiss Count II of the Amended Complaint. Count II avers that A & L and/or Global have refused to pay the amounts due and owing under the supply contract, that Safeco is liable for those amounts pursuant to the surety bond with A & L, and that Safeco's failure simply to make prompt payments to Superior upon request lacks a good faith basis and is arbitrary, vexatious, and in bad faith. Superior asserts a claim under the Pennsylvania Bad Faith Statute, which provides as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. Safeco moves to dismiss this claim as a matter of law, pursuant to Fed.R.Civ.P. 12(b)(6), arguing that under the plain language of § 8371, a private action is unavailable in an action against a surety.

In considering a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), this court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the light most favorable to Superior. *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 315 (3d Cir.1997). The challenge to Count II of the Amended Complaint is purely on the legal sufficiency of Superior's claim: even if Superior were to prove all its factual allegations, it would be unable to recover under the statute because the cause of action and remedies are not available under any of the facts of this case as a matter of law. *See Mortensen v. First*

*Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

### State of the Law under § 8371

As a federal court sitting in diversity, this court must apply state substantive law, in this case the law of Pennsylvania, both statutory and decisional law as interpreted and declared by the highest court of the state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *McKenna v. Pacific Rail Serv.,* 32 F.3d 820, 825 (3d Cir.1994). In the absence of a reported decision by the Pennsylvania Supreme Court, this court refers to the decisions of the intermediate appellate courts for assistance in determining how the Supreme Court would rule. *McKenna,* 32 F.3d at 825; *see also Winterberg v. Transportation Ins. Co.,* 72 F.3d 318, 321–22 (3d Cir.1995) (holding that the court in predicting the Pennsylvania Supreme Court must pay due deference to any decisions from lower Pennsylvania courts). Where neither the Supreme Court nor any intermediate appellate courts have spoken on the question, this court's duty under the *Erie* doctrine is to predict how the Pennsylvania Supreme Court would interpret the statute if this case were before it. *Nationwide Ins. Co. v. Resseguie,* 980 F.2d 226, 229 (3d Cir. 1992). This prediction may be made applying ordinary doctrines of statutory interpretation. *See Id.*

In the instant case, there are no decisions addressing this aspect of the application of § 8371 from the Pennsylvania Supreme Court or from the Pennsylvania Superior Court. Nor has the Third Circuit decided the issue. Although a federal court of appeals also is required to predict the Pennsylvania Supreme Court's resolution of the issue, *see Winterberg,* 72 F.3d at 321–22, the prediction of the Third Circuit would be binding on this court.

This court next will look for some guidance from decisions of other federal district courts. Four courts have addressed this issue in some manner, two of them in this district. In *Turner Constr. Co. v.*

*First Indem. of America Ins. Co.,* 829 F.Supp. 752, 763–64 (E.D.Pa.1993) (Dalzell, J.), Judge Dalzell reached but rejected a claim against a surety under § 8371, finding no facts or evidence that the surety had acted in bad faith. Implicit in this decision was the conclusion that a § 8371 action could be maintained against a surety, although it does not appear that either party to that case argued otherwise. Three years later, Judge Joyner, without further analysis, cited *Turner* for the proposition that "[c]ourts have extended this statute to actions against sureties for failure to honor performance bonds." *Reading Tube Corp. v. Employers Ins. of Wausau,* 944 F.Supp. 398, 403 (E.D.Pa.1996) (Joyner, J.). Again, it does not appear from Judge Joyner's opinion that any party directly presented the issue of whether such an extension of the statute was permissible under Pennsylvania law and the court did not address it. Thus, although both courts concluded, implicitly or explicitly, that a party could recover under § 8371 in an action against a surety under the right set of facts, neither had cause to address the specific issue presented to this court and these decisions therefore cannot control this court's statutory analysis. The conclusions of other courts on this district are not binding on this court. *See Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.").

On the other hand, two courts in the Western District of Pennsylvania have addressed this precise issue directly. Both courts, in unpublished opinions, concluded that a § 8371 cause of action for special damages and attorney's fees cannot be maintained against a surety by the protected party under the surety bond. In *Allegheny Valley Joint Sewage Auth. v. The American Ins. Co.,* Civ. No. 94–2105, slip op. (W.D.Pa.1995), Chief Judge Ziegler looked to the fact that the title of § 8371 refers to "Actions on insurance policies"

and that the clear, unequivocal, and unambiguous language in the text of the statute states that § 8371 applies only "[i]n an action arising under an insurance policy." *Allegheny Valley*, slip op. at 5–6. The court next stated that Pennsylvania courts have refused to recognize a tort action for bad faith breach of contract outside the insurance context, *id.* at 6 (citing *Ruth v. UNUM Life Ins. Co. of Am.*, Civ. No. 94–3969, 1994 WL 481246, *4 (E.D.Pa.1994)), and in creating the legislative exception only on actions under insurance policies, the Pennsylvania legislature intended to so limit the cause of action. *Allegheny Valley*, slip op. at 7–8. Finally, the court discussed the general differences between insurance contracts and suretyship agreements, such as the element of risk present in the former but not the latter and the societal goals furthered by each, in concluding that § 8371 did not reach the issuers of such bonds under the definition of insurance policy. *Id.* at 8–9.

Second, Judge Cindrich of the Western District of Pennsylvania rejected a similar claim in *Pullman Power Prods. Corp. v. Fidelity and Guar. Ins. Co.*, Civ. No. 96–636, slip op. (W.D.Pa.1997). Beginning with the point that § 8371 refers to an "action arising under an insurance policy," the court looked to the ordinary meaning of that term and determined that it did not encompass surety bonds, given the differences between insurance policies and surety bonds existing at law. *Pullman Power*, slip op. at 7–8. The court next rejected the plaintiff's argument that the court should apply to § 8371 the definition of insurance policy in the Unfair Insurance Practices Act ("UIPA"), 40 Pa.C.S. § 1171.1 *et seq.*, which explicitly includes suretyship contracts in the definition of insurance policy. The court held that § 8371 was not part of the UIPA and therefore applied the rule that when a specific definition is present in one legislative act but not in a later act, the court should assume that the omission was intended. *Pullman Power*, slip op. at 8–9; *see id.* at 9 (citing *Creighan v. Firemen's*

*Relief & Pension Fund Bd.*, 397 Pa. 419, 155 A.2d 844 (1959)).

Superior points to *Pennsy Supply, Inc. v. Mountbatten Sur. Co., Inc.*, 117 Dauph. 343, 345 (1997), in which the Court of Common Pleas of Dauphin County permitted the plaintiff to amend its complaint to add a cause of action for bad faith against a surety, finding that "there does not exist positive rule of law which would prohibit the proposed amendment." This case does not advance Superior's position. The *Pennsy* court did not decide anything about the scope or meaning of § 8371; it decided only that the issue had not been decided and was open enough to allow amendment of the complaint. But there obviously is no established, positive rule of law as to whether § 8371 provides a cause of action against sureties; if there were, it would be unnecessary for this court to undertake a prediction of Pennsylvania law. This court must do more than determine whether or not the law is clear on this point, the point at which the *Pennsy* court ended its analysis. This court must reach some legal conclusion on the issue of whether this cause of action can be maintained under § 8371 as a matter of law.

*Statutory Analysis of § 8371*

This court thus must undertake its own analysis of § 8371 in resolving this question. *See Threadgill*, 928 F.2d at 1371 (stating the need for a district court to undertake independent analysis of an issue). This analysis leads to the conclusion that the term insurance policy in § 8371 does not include surety contracts, that there is no bad faith cause of action against a surety by the protected party under a surety bond such as Superior, and that Count II of the Amended Complaint must be dismissed as a matter of law.

■ The starting point of statutory analysis is the language employed by the legislature in the statute itself and this court assumes that the legislative purpose is expressed by the ordinary meaning of the words used. *American Tobacco Co. v.*

*Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (citations and internal quotation marks omitted). When the words of the statute are unambiguous, the ordinary meaning of those words controls and judicial inquiry is complete. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *see* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Absent a clearly expressed legislative intent to the contrary, the statutory language, according to its ordinary meaning, must be regarded as conclusive. *American Tobacco,* 456 U.S. at 68, 102 S.Ct. 1534.

 As noted *supra,* the plain language of § 8371 states that it applies in an action "arising under an insurance policy." The term insurance policy is not separately defined in the statute, thus the court must determine and apply the ordinary meaning of that term. Specifically, for present purposes, this court must determine whether, in its ordinary meaning, the term insurance policy is unambiguous and includes within it a surety agreement. This court answers that question in the negative.

First, the United States Supreme Court has noted that "the usual view, grounded in commercial practice, [is] that suretyship is not insurance." *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 140 n. 19, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) (citing Cushman, *Surety Bonds on Public and Private Construction Projects,* 46 A.B.A.J. 649, 652–53 (1960)). Pennsylvania courts have reflected this view, noting the "fundamental differences" between bilateral contracts of insurance and tripartite surety agreements. *See Grode v. Mutual Fire, Marine and Inland Ins. Co.,* 132 Pa.Cmwlth. 196, 572 A.2d 798, 806 (1990), *aff'd in relevant part, sub nom., Foster v. Mutual Fire, Marine and Inland Ins. Co.,* 531 Pa. 598, 614 A.2d 1086 (1992). *Grode* involved a statutory rehabilitation plan in which a group of sureties was given lower priority than a group of insurance policyholders. *Grode,* 572 A.2d at 806. In affirming this differential treatment, the commonwealth court explained those differences:

> Unlike insurance policies, surety bond premiums are not determined by the insurer on the basis of loss but rather on the *lender's* evaluation of risk. Premiums are paid *not by the lenders* but by the investors; they are paid "up-front" and are not subject to adjustment. The instruments have no fixed terms and no right of cancellation or renewal. These factors support the conclusion that the surety bonds are in the nature of commercial guarantee instruments rather than policies of insurance.

*Id.* at 806 (emphasis in original). The Pennsylvania Supreme Court specifically affirmed, finding no error in the lower court's analysis and rationale. *Foster,* 614 A.2d at 1099.

Legal treatises also have recognized the "wide difference" between suretyship and insurance contracts:

> While insurance is an agreement by which one undertakes for a consideration to pay money to another on the death, destruction, loss, or injury of someone or something, a contract of suretyship is one to answer for the debt, default, or miscarriage of another ... The contract creates a tripartite relation between the party secured, the principal obligor, and the surety, and the rights, remedies, and defenses of a surety cannot be disassociated from this relationship ...

74 Am.Jur.2d *Suretyship* § 253 (1974). *See also* 44 C.J.S. *Insurance* § 2(b) (1993) ("While insurance contracts are in many respects similar to surety contracts, there is a very wide difference between them."); *see also Pullman Power,* slip op. at 7 (citing same sources for same conclusion). Central to this difference is consideration of the relationships among the parties to the different contracts. An insurer and its

insured share a direct contractual relationship and the understanding of that relationship is that the insurer will compensate the insured for loss or damage upon proper proof of claim and without resort to litigation. Special damages for bad faith conduct within that relationship are consistent with such a direct relationship. But a surety such as Safeco and a protected party such as Superior share no such direct contractual relationship and no such promise of prompt, expeditious payment. Safeco's relationship in this case is with A & L and it has agreed only to answer for those debts, to any unrelated parties, for which A & L fails to answer. Special damages are not logically consistent in the absence of that immediate relationship between Safeco and Superior. This court therefore will avoid a construction of § 8371 that would make special damages available in this situation.

Similarly, a surety may assert any defense of which its principal could take advantage. *General Equip. Mfrs. v. Westfield Ins. Co.*, 430 Pa.Super. 526, 635 A.2d 173, 180 (1993), *appeal denied*, 537 Pa. 663, 644 A.2d 1200 (1994). There also is no claim in Pennsylvania for bad faith breach of an ordinary contract. *See Ruth*, 1994 WL 481246, at *4. Thus, there would have been nothing improper or warranting punitive or other special damages had A & L required Superior to prove in litigation that A & L owed, and the amount it owed, under the supply contract. Thus there should be nothing improper in Safeco demanding the same proof from Superior or requiring Superior to litigate in order to recover under the contract. To permit Superior to seek and recover such special damages from Safeco under § 8371 would take away from Safeco defenses and rights that would have been available to A & L as against Superior. This court must avoid an interpretation of the statute that would have such an effect.

Further, Pennsylvania law provides that a court construing a statute must presume "[t]hat the General Assembly does not in-

tend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). This court must consider whether including surety contracts within the term insurance policy under § 8371 would bring about absurd or unreasonable results. Under Pennsylvania law, "it is axiomatic that the liability of a surety is not greater than that of a principal." *McShain v. Indemnity Ins. Co. of North America*, 338 Pa. 113, 12 A.2d 59, 61 (1940); *see East Crossroads Ctr., Inc. v. Mellon–Stuart Co.*, 416 Pa. 229, 205 A.2d 865, 867 (1965) ("[T]he liability of the surety is no greater than its principal."). It follows from this that a cause of action or remedy that would not be available as against a principal should not be available as against the surety. There is no question that neither A & L nor Global could have been subjected to a § 8371 action by Superior, since the supply contract for sound walls unquestionably is not an insurance policy. A & L or Global only could have been sued for breach of contract, because Pennsylvania law does not recognize an action for bad faith breach of contract outside the insurance context. *See Ruth*, 1994 WL 481246, at *4 (citations omitted). A & L and Global also could not have been subject to punitive damages, because the law of Pennsylvania clearly provides that punitive damages are not recoverable in an action solely based upon breach of contract. *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa.Super.Ct.1997) (citing *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928, 932 (1984)), *appeal denied*, 551 Pa. 704, 712 A.2d 286 (Pa.1998). It follows that Safeco should not be subject to either a bad faith claim or punitive damages simply because Superior chose to proceed against it rather than against its principal. The term insurance policy under § 8371 cannot reasonably be construed to include surety contracts, because such a construction would subject Safeco to greater liability than A & L might otherwise have had, in violation of this principle of suretyship law. Further, to hold to the contrary

would 1) provide Superior with a windfall based solely on its decision to proceed against Safeco rather than A & L and 2) provide Superior and other parties protected by surety bonds with a financial incentive to proceed against a surety rather than against the principal in attempting to recover for breach of contract. This would be an unreasonable result, one the state legislature presumptively did not intend and one that this court must avoid in construing the terms of § 8371.

Superior argues that this court should construe § 8371 liberally in order to effect its objects and to promote justice, pursuant to 1 Pa.C.S. § 1928(c); *see Rottmund v. Continental Assur. Co.*, 813 F.Supp. 1104, 1110 (E.D.Pa.1992) (Huyett, J.) ("Remedial statutes like section 8371 should be broadly construed."). This court declines to so construe § 8371, particularly regarding the issue of what actors the statute potentially can reach. Although a remedial statute perhaps should be construed liberally, when such a statute contains penal provisions those provisions must be strictly construed. *Freeze v. Donegal Mut. Ins. Co.*, 412 Pa.Super. 305, 603 A.2d 595, 598, *appeal denied*, 532 Pa. 656, 615 A.2d 1312 (1992); *see* 1 Pa.C.S. § 1928(b)(1) (providing for strict construction of penal provisions). As discussed *supra*, § 8371 provides for punitive damages, attorney's fees, and superinterest of prime rate plus 3% on the amount of the insurance claim; Pennsylvania law properly regards all of these as penal. *See Pavex, Inc. v. York Fed. Sav. and Loan Ass'n*, 716 A.2d 640, 647 (Pa.Super.Ct.1998) (affirming trial court judgment holding that statutes awarding attorneys' fees are penal in nature and must be strictly construed); *Johnson*, 698 A.2d at 639 (holding that the imposition of exemplary or treble damages is essentially punitive in nature). These provisions thus must be subject to strict construction under § 1928(b)(1). It follows that the scope

of § 8371 should be constrained and not read to apply to an ever-increasing range of actors, such as sureties being sued by the parties protected by their surety bonds. This court thus must give the term insurance policy a narrow construction and not read it to include surety contracts.

Superior's primary argument is that this court should look to and apply to § 8371 the definition of insurance policy in the UIPA, which specifically defines insurance policy as including "any contract of ... suretyship." 40 Pa.C.S. § 1171.3. According to Superior, the UIPA and § 8371 are *in pari materia*,[3] in that they both relate to the same class of persons and things and should be construed together as one statute. *See* 1 Pa.C.S. § 1932(b); *see also Hamilton v. Unionville–Chadds Ford Sch. Dist.*, 552 Pa. 245, 714 A.2d 1012, 1014 (1998). Superior emphasizes the legislative history of § 8371, specifically that the statute was intended to undo the decision in *D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966, 970 (1981), in which the Pennsylvania Supreme Court expressly declined to recognize a private cause of action against an insurer for bad faith, leaving it for the legislature to determine whether such an action was necessary to supplement the state enforcement mechanisms of the UIPA. *See Rottmund*, 813 F.Supp. at 1110 (noting that the Pennsylvania legislature rejected the reasoning of the *D'Ambrosio* court by passing § 8371). If § 8371 was intended to overrule *D'Ambrosio* and to provide the private cause of action to supplement the UIPA, Superior apparently argues, § 8371 should cover the same broad scope as the UIPA and if the UIPA defines insurance policy to reach suretyship contracts, then § 8371 should as well.

There is some surface appeal to Superior's argument. The problem with it is that it requires this court to look past

---

**3.** "Upon the same matter or subject." Black's Law Dictionary 544 (6th ed., abridged 1991); *see also* 1 Pa.C.S. § 1932(a) ("Statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.").

the ordinary meaning of insurance policy without clear instruction from the legislature to do so. *See American Tobacco,* 456 U.S. at 68, 102 S.Ct. 1534 (stating that in absence of clear direction from legislature, the ordinary meaning of statutory language controls). The *in pari materia* canon of construction is applicable only if the words of a statute are ambiguous. *In re McFarland's Estate,* 377 Pa. 290, 105 A.2d 92, 95 (1954). *In pari materia* is "only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and ... cannot be invoked where the language of a statute is clear and unambiguous." *Id.* (quoting 82 C.J.S. *Statutes* § 366 b). Given the general differences between suretyship and insurance, this court does not construe the term insurance policy as ambiguous so as to invoke the *in pari materia* canon.

█ Rather, where a statutory term is specially defined in one statute but undefined in a later statute, a court must assume that the omission was intended by the legislature and that the special definition applies only to the one statute and not to the latter statute. *See Creighan,* 155 A.2d at 846 (stating that the court must assume that the legislature purposely avoided repeating a definition from one statute in a later statute). The General Assembly provided in the UIPA a special, broad definition of insurance policy, one expressly including within it contracts of suretyship, but left that term undefined in § 8371. This court will presume that omission was intentional and that the broader definition of insurance policy is limited to the UIPA only. Therefore the ordinary meaning of insurance policy, recognizing the "wide difference" between insurance and suretyship, controls the construction of § 8371. This conclusion brings this court in line with the courts in the Western District of Pennsylvania that analyzed this aspect of § 8371, both of which addressed and rejected the construction urged by Superior. *See Pull-man Power,* slip op. at 9; *Allegheny Valley,* slip op. at 7–8.

## Conclusion

For the foregoing reasons, venue is both proper and convenient in this judicial district and the defendant's motion to dismiss for improper venue or to transfer is denied. The defendant's motion to dismiss Count II of the Amended Complaint for failure to state a claim is granted and that count is dismissed.

An appropriate order follows.

## *ORDER*

AND NOW, this 4th day of October 1999, for the reasons stated in the attached Memorandum, it hereby is ORDERED as follows:

1. Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED and Count II of the Amended Complaint is DISMISSED WITH PREJUDICE.

2. Defendant's Motion to Dismiss Due to Improper Venue Pursuant to Fed. R.Civ.P. 12(b)(3) is DENIED.

3. Defendant's Motion in the Alternative to Transfer Venue for the convenience of parties and in the interest of justice pursuant to 28 U.S.C. § 1404(a) is DENIED.

4. Defendant's Motion in the Alternative to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) as to the original Complaint is DENIED AS MOOT.

5. Defendant's Motion in the Alternative for More Definite Statement Pursuant to Fed.R.Civ.P. 12(e) as to the original Complaint is DENIED AS MOOT.